[Crim. No. 21982. Dec. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
REGGIE ROSCHI JOHNSON, Defendant and Appellant.

COUNSEL

Robert L. Hersh, under appointment by the Supreme Court, for Defendant and Respondent.

Quin Denvir, State Public Defender, and Dennis P. Riordan, Acting Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RICHARDSON, J.—Defendant appeals from his conviction of assault with intent to commit murder (Pen. Code, § 217, repealed, Stats. 1980, ch. 300, § 2, p. 628, eff. Jan. 1, 1981) and assault with a deadly weapon (*id.*, § 245). He was also found to have used a firearm in the commission of each offense (*id.*, §§ 1203.06, subd. (a)(1), 12022.5), and to have inflicted great bodily injury on his victim (*id.*, § 12022.7). Defendant was sentenced to the lower term of two years on each count, with a two-year enhancement added to each term for use of a firearm. The great bodily injury finding was stricken for purposes of sentencing, and the sentence on the section 245 count, including the enhancement, was stayed, leaving an aggregate unstayed sentence of four years.

Consistent with our recent decision in *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446], in which we held that it was error for a court, as it did in this instance, to instruct on implied malice in a Penal Code section 217 prosecution, we will conclude that defendant is entitled to a reversal of his conviction of assault with intent to commit murder. We will affirm his conviction of assault with a deadly weapon.

On the evening of December 8, 1978, the victim Leo Mata consumed a large quantity of beer and was intoxicated by a combination of alcohol and drugs. At approximately 11 p.m., after attending a party with friends, he was standing in the middle of a narrow residential street in

Pittsburg arguing with his companions about his ability to drive home. Approaching cars were forced to slow down to avoid hitting him, and on one occasion Mata kicked a car which he thought had come too close.

A few minutes later, defendant similarly was forced to stop his car because Mata was standing in his way, and hostile words were exchanged between the two. Mata then leaned with folded arms on the windowsill on the driver's side of the vehicle and uttered a racial obscenity at the defendant. The car window on the driver's side was partially open. Defendant at some point told Mata either that defendant had a gun or that he would shoot him. There was no evidence that Mata saw any weapon, but when thereafter he reached into the car defendant fired two shots, at least one of which passed through the car window, hitting Mata in the throat and chest and severely and permanently injuring him. Defendant thereupon rapidly backed his vehicle away and fired a third shot which lodged in the trunk of a nearby car.

Upon their arrival at the scene of the shooting, the police were given a description of defendant and his car. The vehicle was found at defendant's father's house, and a search of the car's interior revealed two spent and two live cartridges. Defendant's father, after permitting police to search the residence for defendant, then directed them to the home of Nora, defendant's girl friend. Nora permitted the police to enter her residence where they found defendant lying asleep in a bedroom within approximately six feet of a loaded firearm. Defendant was then arrested.

Upon stipulation, the court relied upon the contents of the police report and an unsigned statement regarding the circumstances of the arrest, and denied defendant's motion to suppress the evidence which was found in the car and Nora's residence.

We consider defendant's multiple contentions.

I. *Instructions.*

(1) Defendant first asserts trial court error in instructing the jury that a finding of implied malice may support a conviction for assault with intent to commit murder. The jury was given the following instruction, being a portion of California Jury Instructions Criminal (CALJIC) No. 8.11:

"Malice is express when there is manifested an intent unlawfully to kill a human being.

"Malice is implied when the killing results from an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness.

"The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.

"'Aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

Relying on *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], and *People* v. *Heffington* (1973) 32 Cal.App.3d 1 [107 Cal.Rptr. 859], defendant correctly argues that the trial court erroneously instructed, using language which permitted the jury to imply malice. In *People* v. *Murtishaw, supra*, we expressly disapproved the challenged portion of CALJIC No. 8.11 within the context of a charge of assault with intent to commit murder, observing: "Established California authority ... demonstrates that the concept of implied malice, insofar as it permits a conviction without proof of intent to kill, is also inapplicable to a charge of assault with intent to commit murder." (29 Cal.3d at p. 764.) We concluded that "[i]mplied malice, as defined in CALJIC No. 8.11, cannot coexist with a specific intent to kill. To instruct on implied malice in that setting, therefore, may confuse the jury by suggesting that they can convict without finding a specific intent to kill." (*Id.*, at p. 765, fn. omitted.)

Under the circumstances of *Murtishaw*, we there held that the erroneous instruction was not prejudicial because that defendant was also convicted of three first degree murders "and in light of the evidence presented it [was] virtually certain that the jury found defendant intended to kill these victims. Defendant's assault on Lance Bufflo cannot be distinguished from his slaying of Bufflo's companions." (*Ibid.*) Applying the test of prejudice enunciated in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], we concluded that it was not reason-

ably probable that a result more favorable to defendant would have been reached in the absence of the error. (*Ibid.*)

In the present case there exist no similar circumstances which rescue the case from prejudicial error. Here, the defense was self-defense. Focusing on defendant's state of mind, the jury, on the facts before it, could have found "implied" malice by concluding that defendant had performed "an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life." In so doing, the jury could have found defendant guilty without finding the necessary "express" malice demonstrated by an "intent unlawfully to kill a human being." Nor does defendant's conviction of an assault with a deadly weapon provide a basis for concluding that the jury found express malice because no "intent . . . to kill" is required for a finding of guilt on that charge. Consequently, there is nothing in this record which can be analogized to the *Murtishaw* jury's findings of three connected first degree murders and we cannot similarly conclude that the error was nonprejudicial.

Because of the foregoing instructional error which permitted the jury to find defendant guilty of assault with intent to commit murder without finding the requisite specific intent to kill, we conclude that the judgment convicting defendant of a violation of section 217 must be reversed and the cause remanded for further proceedings.

## II. *Sua Sponte Duty to Instruct*

Defendant argues that the trial court *sua sponte* should have instructed on the lesser included offense of attempted manslaughter. However, both parties conceded at oral argument that if we reversed on the basis of *Murtishaw* instructional error, the issue of the trial court's *sua sponte* duty to instruct on the lesser included offense need not be reached. Having concluded that reversal is so mandated by *Murtishaw*, we do not further consider the trial court's *sua sponte* responsibility. In the event of retrial, the court and parties will be fully aware of the disputed lesser included offense instruction.

## III. *The Automobile Search*

Defendant argues that the trial court erroneously denied his motion to suppress evidence which was found in the warrantless search of his car, namely, the cartridges. He insists that a warrant should have

been obtained because the vehicle was stationary and under police control, and his father had been cooperative and posed no risk to preservation of the evidence. The contention lacks merit.

At the scene of the shooting, and shortly thereafter, the police obtained descriptions of both car and driver. Their suspicions centered on defendant and several officers went to his last known address, his father's house. There they observed defendant's vehicle parked in the driveway. It resembled the car which had been described to them by eyewitnesses, had a shattered window on the driver's side, and unlike other cars parked nearby, lacked frost on its hood—indicating recent use. Defendant's father stated that his son was not at home and that the car had been parked in the same place all day. When an officer looked through a window of the vehicle and observed a spent cartridge casing on the floorboard on the driver's side, the vehicle was searched and another spent and two live shells were found in the passenger compartment.

We have said that a warrantless vehicle search is permissible "so long as it can be demonstrated that (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417].) Both conditions were satisfied here.

An exigency existed. A dangerous armed suspect was at large. A victim had just been seriously wounded. Moreover, it was reasonable to assume that the gun remained in the vehicle, which possibility alone, we note, could have justified a warrantless search of the automobile, including its trunk. In *Cady* v. *Dombrowski* (1973) 413 U.S. 433, 447 [37 L.Ed.2d 706, 718, 93 S.Ct. 2523], the United States Supreme Court approved such a search because of justifiable police "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." (See *Wimberly* v. *Superior Court, supra*, 16 Cal.3d, at p. 567.) In similar fashion the Court of Appeal recently, in *People* v. *Vodak* (1980) 105 Cal.App.3d 1014, 1018 [164 Cal.Rptr. 785], approved a search for stolen weapons observing that "[r]ather than expose the public or themselves to the risks attendant upon having [a] vehicle towed or awaiting the arrival of a warrant, it was prudent and, we believe, necessary, for the officers to

have searched the trunk when they did." Here, the evidence sought to be suppressed was readily found not in a trunk but in the passenger compartment, an area in which there was a substantially lessened expectation of privacy.

In addition, there were reasonable grounds for police suspicion of the truth of the father's statement that the vehicle had been in the driveway all day. As a result the officers had well founded cause to believe that the father presented a risk to the continued preservation of any compromising evidence in the car, necessitating an immediate search. We have previously approved a warrantless automobile search when "There was at least one other person in the apartment at the time of defendant's arrest who would have been in a position to move the car or destroy the evidence if the police did not conduct an immediate search or seizure." (*People v. Dumas, supra*, 9 Cal.3d, at p. 885.)

Accordingly, the warrantless search was justified by the three grounds of exigency which we identify as: (1) police pursuit of an armed and dangerous suspect (cf. *People v. Hill* (1974) 12 Cal.3d 731, 754 [117 Cal.Rptr. 393, 528 P.2d 1] [approving a warrantless search of a residence during "fresh pursuit" of a suspected murderer]); (2) the danger posed to the officers and public at large by the possibility that a weapon remained in the car; and (3) the danger of removal or loss of the evidence from the vehicle.

The second requirement of *Wimberly* and *Dumas*, the existence of probable cause to search the vehicle, was readily met. The car resembled the vehicle described by witnesses. The broken window was consistent with evidence that two shots may have been fired through the driver's window. The spent cartridge on the floorboard provided ample reason to believe a weapon had been fired from within the vehicle.

We sustain the trial court's denial of the motion to suppress the evidence found in defendant's automobile.

IV. *Warrantless Arrest Within a Dwelling*

■ Relying on *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal. Rptr. 629, 545 P.2d 1333], defendant next contends that the police officers improperly entered the dwelling of Nora in order to arrest him. The circumstances persuade us otherwise.

Initially, we note that entry into Nora's home apparently was with her consent, which fact alone could support the rejection of defendant's claim. The parties neither argue nor rely on this fact; nor do we because the entry was permissible on other grounds. Within 75 minutes of the shooting defendant's car was discovered at his father's house from which point the officers went to Nora's home and arrested him. The police were in direct and fresh pursuit of a suspect reasonably believed to be armed who had already shot one victim.

Contrary to defendant's contention, *Ramey* did not narrow the scope of the exigent circumstances exception to the warrant requirement. As we more recently reaffirmed in *People* v. *Escudero* (1979) 23 Cal.3d 800, 808 [153 Cal.Rptr. 825, 592 P.2d 312], "in appropriate circumstances the fresh pursuit of a fleeing felon may constitute a sufficiently grave emergency to justify an exception to the warrant requirement and make it constitutionally reasonable for the police to enter a private dwelling without prior authorization of a magistrate. [Citations.]" In that case we approved an arrest within a defendant's residence when he had been surprised in the act of committing a burglary, had escaped, and had been identified through a description and car registration. The police then proceeded directly to the defendant's residence, made a warrantless entry and arrested him. We observed "that although 'fresh pursuit' of a fleeing felon must be substantially continuous and afford the law enforcement authorities no reasonable opportunity to obtain a warrant, it is not necessary that the suspect be kept physically in view at all times." (*Id.*, at p. 810.) Here, the officers were in expeditious pursuit which was continuous and direct.

Moreover, as we have stated, defendant was suspected of a violent offense involving the repeated discharge of a firearm. Exigent circumstances validating a defendant's arrest within a dwelling may be deemed to exist when there is a "likelihood that one of the suspects may have been an armed killer (see *James* v. *Superior Court* (1978) 87 Cal.App.3d 985, 991, 994 ...)." (*People* v. *Frierson* (1979) 25 Cal.3d 142, at p. 169 [158 Cal.Rptr. 281, 599 P.2d 587].) Defendant does not argue that the officers did not have probable cause to enter Nora's house, but that the entry should have occurred only after issuance of a warrant because of an absence of exigency.

Under the circumstances, we conclude that the officers were fully justified in entering the dwelling to arrest defendant, and we affirm the

trial court's denial of the motion to suppress the evidence found in the home.

*Conclusion*

We reverse and remand for further proceedings the judgment convicting appellant of a violation of Penal Code section 217, and affirm the judgment convicting him of violating Penal Code section 245, subdivision (a).

Tobriner, J., Mosk, J., Newman, J., Kaus, J., and Broussard, J., concurred.

**BIRD, C. J.**—I concur in the judgment only.