[S.F. No. 24183. Nov. 17, 1983.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
RICHARD JAMES VALDEZ, Real Party in Interest.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert
H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, As-

sistant Attorney General, James T. McNally and Constance M. Barton, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Kenneth M. Wells, Public Defender, Caroline R. Lange and Everett J. Avila, Assistant Public Defenders, for Real Party in Interest.

Quin Denvir, State Public Defender, Steffan Imhoff, Deputy State Public Defender, Marshall W. Krause, Krause, Timan, Baskin, Shell & Grant, Ephriam Margolin, Amitai Schwartz, Margaret C. Crosby and Alan L. Schlosser as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**RICHARDSON, J.**—In this proceeding, the People seek a writ of mandate to compel the trial court to vacate a pretrial order suppressing several items discovered by the police in a warrantless search of an automobile trunk. Although the trial court determined that the police had probable cause to search the car trunk in question, the court apparently concluded that the search was improper because in its view the prosecution had not adequately demonstrated the existence of sufficient "exigent circumstances" to justify the search.

As we shall explain, we have concluded that the on-the-scene warrantless search of the automobile trunk in this case was permissible under the traditional, well established contours of the "automobile exception" to the general warrant requirement. Accordingly, we conclude that the trial court erred in suppressing the evidence found in the trunk and we issue the requested writ.

### 1. *The Facts*

At approximately 10 a.m. on January 24, 1979, Richard Stevens went to the premises of an old abandoned house near the intersection of Franklin and Mack Roads in Sacramento County to gather firewood. Stevens testified that he had obtained firewood from the premises on several occasions in the past and that he knew the property had been abandoned for at least two years.

On the morning in question, however, he discovered a blue Ford Courier pickup truck parked in a detached garage at the back of the property. Seeing

no one else on the premises, Stevens approached and inspected the pickup and found that its hood was open, its battery was missing, its radio equipment had apparently been taken since wires were hanging under the dashboard and its mirrors had been removed. Surmising that the pickup had been stolen and stripped, Stevens took a checkbook from the dashboard of the pickup and brought it to the California Highway Patrol office where he reported the incident. The highway patrol confirmed that the owner of the pickup had reported that the truck had been stolen.

About 1 p.m. that same day, two Sacramento County police officers who had learned of the stolen vehicle approached the abandoned premises. When the officers drove by the property, they saw—in addition to the pickup in the garage—a second vehicle, a "black over blue" Oldsmobile sedan, backed up to the garage. Believing that those persons who had stolen the pickup might have returned to the truck, the officers summoned additional policemen; when three or four more officers arrived, the police drove onto the property.

As the police entered the premises, defendant Richard James Valdez and a second suspect walked out of the garage where the stolen pickup was located and approached the Oldsmobile. The officers ordered the two suspects away from the immediate vicinity of the pickup and Oldsmobile and detained the two in police cars while they investigated the premises. The officers inspected the pickup and found that various parts of the truck, including the radiator, mirrors, radio and speakers, were missing; in addition, oil and hydraulic fluid were seen dripping from the underside of the pickup.

The officers then looked into the Oldsmobile, noticed various tools but no car parts on the floor of the car, and saw the car keys in the ignition. Without obtaining the consent of either Valdez or his companion, and without securing a search warrant, one officer took the keys of the car and opened the trunk of the Oldsmobile in search of the missing parts of the pickup. In the trunk, the officer found a radiator, mirrors, and a car radio and speakers which he believed had been removed from the pickup truck.

Subsequently, defendant was charged with vehicle theft (Veh. Code, § 10851) and receiving stolen property (Pen. Code, § 496). After the preliminary hearing disclosed, inter alia, the facts set forth above, defendant moved pursuant to Penal Code section 1538.5 to suppress the evidence found in the search of the automobile trunk. Although the trial court concluded that the police had probable cause to believe that evidence of the pickup theft might be located in the trunk of the Oldsmobile, the court ultimately ruled that the search of the trunk was illegal, reasoning that in light of the number of officers present and the possibility of obtaining a

warrant, the prosecution had failed to prove the existence of sufficient "exigent circumstances" to justify the warrantless search.

The People then instituted the present mandate proceeding pursuant to Penal Code section 1538.5, subdivision (o). The Court of Appeal granted an alternative writ and, after briefing and argument, ultimately ruled, in a divided decision, in favor of the People. Because of a conflict in recent Court of Appeal decisions involving warrantless searches of automobile trunks, we granted a hearing in this and several other cases to clarify the governing legal principles in this area.

2. *Under the Traditional "Automobile Exception" to the Warrant Requirement, the Immediate, On-the-scene Search of the Automobile Trunk in This Case Was Valid*

As we recently explained in *People* v. *Chavers* (1983) 33 Cal.3d 462, 466-467 [189 Cal.Rptr. 169, 658 P.2d 96], the United States Supreme Court has adopted a rule that police officers who lawfully stop a vehicle, having probable cause to believe that contraband is located or concealed somewhere therein, may conduct a warrantless search of the vehicle that is as thorough (as to location and type of container searched) as that which a magistrate could authorize by warrant. (*United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].)

We further explained in *Chavers* that prior decisions of this court likewise would sustain a warrantless automobile search based upon probable cause, so long as some exigent circumstances existed, and that "sufficient exigency generally exists whenever probable cause is first discovered at the time the police stop a vehicle and thus have not had a prior opportunity to obtain a warrant." (33 Cal.3d at pp. 467-468.) We concluded in *Chavers* that, "Accordingly, we hold that probable cause to believe that a lawfully stopped automobile contains contraband justifies an immediate warrantless search of the automobile *despite the absence of any additional exigent circumstances." (Id., at p. 469, italics added.) We agreed with the United States Supreme Court in *Ross, supra,* that the scope and character of such a search would be "limited by the reason for the search and the kind of object believed to be concealed." (*Id.,* at p. 470.)

In the present case, defense counsel conceded at oral argument that the police did indeed have probable cause to believe that the trunk of the Oldsmobile contained seizable evidence. Defense counsel argued, however, that despite the existence of probable cause to search the trunk, the warrantless search was nonetheless invalid because the prosecution assertedly failed to prove the existence of sufficient "exigent circumstances" to justify

an immediate search of the vehicle. As noted, the trial court agreed with this assertion and relied upon the alleged absence of such exigent circumstances in concluding that the evidence found in the trunk should be suppressed.

Our analysis in *Chavers* indicates, however, that the trial court's conclusion was based on a misapprehension of the nature of the "exigency" required to justify a warrantless search. Under the governing authorities, (1) the ready mobility of automobiles, (2) the lesser expectation of privacy in their contents, (3) the significant administrative expense, delay and risk of loss of contents entailed in requiring the police either to secure all automobiles at the scene or to tow all suspected vehicles to a securely maintained depot, and (4) the need for clear guidelines by which police may guide and regulate their conduct, have led to the adoption of a general rule permitting the police to conduct an immediate, on-the-scene warrantless search of an automobile under such circumstances. (See *Chavers,* at p. 469; *Arkansas* v. *Sanders* (1979) 442 U.S. 753, 760-761, 765, fn. 14 [61 L.Ed.2d 235, 242-243, 246, 99 S.Ct. 2586].)

In the instant case, although the police did not literally "stop" the Oldsmobile "on the highway," the police did not even know of the existence of the Oldsmobile prior to discovering it next to the stolen pickup. Thus, they certainly cannot be faulted for failing to obtain a warrant to seize and search the vehicle before proceeding to the premises in question. (Cf. *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022].) While it may well have been possible for the police, after discovering the Oldsmobile on the premises, simply to have seized the vehicle and to have postponed a search of its trunk until after a warrant had been obtained, a prompt on-the-scene warrantless search of the automobile does not violate the state or federal Constitutions. (See *Chavers,* at pp. 468-469.)

Accordingly, we conclude that the trial court erred in suppressing the numerous items found in the car trunk.

Let a peremptory writ of mandate issue as requested.

Kaus, J., Broussard, J., and Grodin, J., concurred.

**MOSK, J.,** Concurring.—I reach the same result as the majority, but by a somewhat different route: I would find that there were exigent circumstances on these facts.

While the defendant and another suspect were briefly "detained"—in the words of the majority—during the search of the car, they were not under

arrest. Nor could they be, because at that time the police had no valid basis to arrest them on any specific charges.

If, as proposed by the dissent, the police had been required to secure the vehicle while an officer obtained a warrant or to tow the vehicle to a garage for that purpose, they would have had no probable cause to further detain the suspects during the longer period necessary to accomplish either alternative. (See, e.g., *People* v. *McGaughran* (1979) 25 Cal.3d 577, 586-587 [159 Cal.Rptr. 191, 601 P.2d 207].) Thus, by the time the vehicle was ultimately searched and the stolen articles found, the suspects would have been long gone.

Under these facts, an exigency existed that justified the search on the scene. For that reason I concur in the majority conclusion.

**BIRD, C. J.**—I respectfully dissent. I do not believe that this state's Constitution permits warrantless automobile searches in the total absence of exigent circumstances.

## I.

No decision of this court has ever squarely confronted the question of whether article I, section 13 of the California Constitution provides greater protection against warrantless automobile searches than does the federal Constitution.[1]

Over the years, this court has recognized and strongly emphasized the importance of the warrant requirement in the automobile search context. For example, in *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal.Rptr. 497, 598 P.2d 467], which invalidated a warrantless search of closed boxes found in the trunk of a lawfully stopped vehicle, this court stated: "The warrant requirement is not an empty formality. It is the cornerstone of the Fourth Amendment's guarantee of the right to privacy. The assurance that a deter-

---

[1]The lead opinion in *People* v. *Chavers* (1983) 33 Cal.3d 462 [189 Cal.Rptr. 169, 658 P.2d 96] does not control the outcome of the trunk search issue in this case. As I indicated in my concurring and dissenting opinion in *Chavers,* the propriety of that search was not at issue since the appellant failed to challenge the warrantless search of the car's interior. (See *id.,* at p. 474 (conc. and dis. opn. of Bird, C. J.).) Since the language in the lead opinion which purported to uphold the search without a showing of exigency was dicta, it "ought not to control the judgment in a subsequent suit[,] when the very point is presented for decision." (*Achen* v. *Pepsi-Cola Bottling Co.* (1951) 105 Cal.App.2d 113, 125 [233 P.2d 74], quoting *Cohens* v. *Virginia* (1821) 19 U.S. (6 Wheat.) 264, 399 [5 L.Ed. 257, 290].)

In my *Chavers* opinion, I specifically reserved judgment on the particular rules to be applied under the warrant requirement of the California Constitution. (*People* v. *Chavers, supra,* 33 Cal.3d at p. 476 (conc. and dis. opn. of Bird, C. J.).) That question is presented in this case.

mination of probable cause will be made by a neutral and detached magistrate, rather than an officer under stress in the field is not a minor guarantee. [Citation.] The authority of the executing officer and his need to search are carefully reviewed. [Citation.] Limits are imposed on the search through the requirement of particularity. [Citation.] And the factual basis on which the affiant is justifying the search is made in advance of the search itself. This ensures that a search will not be impermissibly justified by what it turns up." (*Id.*, at p. 860; see also *People* v. *Carney* (1983) 34 Cal.3d 597, 604 [194 Cal.Rptr. 500, 668 P.2d 807].) The concerns expressed in *Dalton* are applicable to the state Constitution. (See, e.g., *People* v. *Brisendine* (1975) 13 Cal.3d 528, 549 [119 Cal.Rptr. 315, 531 P.2d 1099].)

A number of this court's decisions have held that a warrantless search of an automobile is permissible as " 'long as it can be demonstrated that (1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search.' " (*People* v. *Johnson* (1981) 30 Cal.3d 444, 450 [179 Cal.Rptr. 209, 637 P.2d 676], quoting from *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; accord *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563 [128 Cal.Rptr. 641, 547 P.2d 417]; *People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148].)

The common thread running throughout these decisions is the recognition that a warrantless automobile search is improper unless there are articulable facts in the record showing both "exigent circumstances" and "probable cause."[2]

Although the *Dumas-Cook-Johnson* line of cases appears to have been bottomed on the federal Constitution, I would reaffirm the two-pronged test of these decisions under the state Constitution. An actual exigency must exist before officers conduct a warrantless search of any portion of an automobile. Where no such exigency exists, the police should be required to obtain a warrant. They may either secure the automobile or have it towed to a nearby secure location pending the magistrate's decision to issue the warrant.

---

[2]To satisfy the "probable cause" prong of the *Dumas-Cook-Johnson* test, an officer must be "aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched." (*Wimberly* v. *Superior Court, supra,* 16 Cal.3d at p. 564.) Moreover, because of the greater expectation of privacy associated with a car trunk, probable cause to search the passenger compartment is not necessarily sufficient to justify a search of the trunk. (See *id.*, at p. 568.) Probable cause to search the trunk in this case has been conceded. Therefore, that prong of the *Dumas-Cook-Johnson* test is not discussed further in this opinion.

I have noted that "the rules regarding the need for obtaining a warrant must be the same for all unseverable portions of an automobile." (*People* v. *Chavers, supra,* 33 Cal.3d at p. 476 (conc. and dis. opn. of Bird, C. J.).) This is true because the exigencies which excuse officers from obtaining a warrant to search the passenger compartment of an automobile "will likely be applicable to a glove box search as well." (*Id.,* at p. 474.)

The same reasoning holds for the search of the trunk. In situations where the "highly movable nature" of the entire automobile would render compliance with the warrant requirement "an impossible or impractical alternative" (*People* v. *Dumas, supra,* 9 Cal.3d at p. 884), that exigency would excuse the warrant requirement in a search of any of its parts, such as the trunk.

Reaffirmation of the exigent circumstances requirement under the California Constitution would give law enforcement full authority to conduct a warrantless search when there is a genuine need to do so. Also, the resulting rule would be a fair one. "Where genuine exigencies exist, broad constitutional mandates often give way to the necessity for immediate action . . . ." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 275 [127 Cal.Rptr. 629, 545 P.2d 1333].) If the circumstances of the situation demanded noncompliance with the warrant requirement, the state's interest in preserving evidence of a crime would outweigh the individual's interest in interposing the judgment of a neutral and detached magistrate between the citizen and the police as well as protecting the sanctity of his or her vehicle. "[I]n each [such] case the claim of an extraordinary situation [would have to be] measured by the facts known to the officers," since "[t]here is no ready litmus test for determining whether such circumstances exist." (*Id.,* at p. 276.)

One of the reasons the majority advance for abolishing the requirement of actual exigent circumstances is "the need for clear guidelines by which police may guide and regulate their conduct . . . ." (Maj. opn., *ante,* at p. 16.) I wholeheartedly agree with the need for clear guidelines. "If the police are to comply [with the Fourth Amendment], they must be able to understand what [it] demands of them. . . . The police officer in the field must be able to determine with some certainty, before he or she acts, whether or not the invasion of privacy is justified under the Constitution." (*In re Tony C.* (1978) 21 Cal.3d 888, 903 [148 Cal.Rptr. 366, 582 P.2d 957] (conc. and dis. opn. of Bird, C. J.).)

That clear-cut guidelines are needed does not compel the conclusion, however, that important constitutional restraints on the state should be abolished every time the state asserts that it is "too difficult" to comply with them. It would, of course, be impractical for police officers to adhere to overly

complex or vague rules in the automobile context. However, imposing *some* constitutionally based guidelines is far more faithful to the underlying constitutional values than the majority's "per se" rule that *no* exigent circumstances need be demonstrated when police conduct a warrantless search of a vehicle. (See Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances* (1978) 31 Okla.L.Rev. 110.)

Further, the requirement of "actual exigency" is a clear and workable standard. (Cf. *In re Tony C., supra,* 21 Cal.3d at p. 903 (conc. and dis. opn. of Bird, C. J.).) Since the concept of exigent circumstances is one with which the police have been working for some time in both the search and arrest contexts (see, e.g., *People* v. *Ramey, supra,* 16 Cal.3d at pp. 275-276), no new or confusing legal concept is involved.

Today's majority list several other factors which have led "governing authorities" to adopt "a general rule permitting the police to conduct an immediate, on-the-scene warrantless search of an automobile . . . ." (Maj. opn., *ante,* at p. 16.) Those additional factors are "(1) the ready mobility of automobiles, (2) the lesser expectation of privacy in their contents, [and] (3) the significant administrative expense, delay and risk of loss of contents entailed in requiring the police either to secure all automobiles at the scene or to tow all suspected vehicles to a securely maintained depot . . . ." (*Ibid.*) In my view, none of these additional factors, considered separately or together, justifies the wholesale abolition of the exigency requirement in every warrantless automobile search case.

That automobiles are *sometimes* "readily mobile" does not provide a reason for dispensing with the exigency requirement in *all* automobile searches. Consider the situation where all suspects are in custody, the vehicle which purportedly contains the suspect evidence is secured, and access to a nearby magistrate is possible. How does the "mobility" rationale apply? "Because the vehicle is now in the exclusive control of the authorities, any subsequent search cannot be justified by the mobility of the car." (*United States* v. *Ross* (1982) 456 U.S. 798, 830 [72 L.Ed.2d 572, 597, 102 S.Ct. 2157] (dis. opn. of Marshall, J.).) Moreover, closed containers—even as small as the leather and metal boxes involved in *People* v. *Dalton, supra,* 24 Cal.3d at page 854—are often as "mobile" as automobiles, yet a warrantless search in the absence of exigent circumstances is generally impermissible. (*Id.,* at p. 857; see also *People* v. *Carney, supra,* 34 Cal.3d at p. 605.)

There are several reasons why the "lesser expectation of privacy" rationale does not justify a wholesale abolition of the exigency requirement. First, privacy obviously does play an important part in a person's decision to use

an automobile. One may choose a car over public transportation because the former provides a more private or individualized means of travel. Second, individuals often leave the most personal and private of their belongings in their cars, and contemplate that these items will remain free from warrantless examination by law enforcement authorities.[3] Finally, the fact that some parts of a car—such as the license plates, headlights, and exhaust system—are open to ready inspection scarcely proves that one has a reduced expectation of privacy in other less accessible areas of the vehicle. (*Grano, supra,* 19 Am.Crim.L.Rev. at p. 638.) The citizens of California are constitutionally entitled to respect for their right to privacy in their automobiles. The exigency requirement gives voice to that right.

I also have difficulty understanding why the "significant administrative expense, delay, and risk of loss of contents" is a reason for dispensing with the exigency requirement altogether. If "the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment" (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 393 [57 L.Ed.2d 290, 301, 98 S.Ct. 2408]), then that reason certainly should not be able to justify abridging the more far-reaching protections of article I, section 13 of the California Constitution.

Moreover, to require exigent circumstances in the automobile context involves no greater administrative expense and delay than is present in the house or closed container search context. If in a particular situation, the expense and delay involved in obtaining a warrant increased the risk of losing the evidence, such exigencies would permit noncompliance with the warrant requirement. To justify a warrantless search in every automobile search case on the bold assertion that such "administrative expense, delay, and risk of loss of contents" is present is to "exalt the exceptions above the rule." (*People* v. *Minjares* (1979) 24 Cal.3d 410, 421 [153 Cal.Rptr. 224, 591 P.2d 514].) I cannot believe that the California constitutional guarantee against unreasonable seizures and searches was intended to be applied in this manner.

In sum, I believe that the California Constitution, as well as decisions of this court, support the view that "exigent circumstances" are required

---

[3]One commentator has noted that automobiles store "the bank statement that should be brought inside the house, the library book that should be returned, the briefcase that will be needed at a subsequent meeting, the work one had planned to do overnight, and sundry items permitted, deliberately or from laziness, to remain in the car until some other day." (Grano, *Rethinking the Fourth Amendment Warrant Requirement* (1982) 19 Am.Crim.L.Rev. 603, 637 [hereafter, *Grano*]; see also *People* v. *Dalton, supra,* 24 Cal.3d 850, 859 ["It cannot be assumed that the owner of the vehicle has no personal effects in the car to which a Fourth Amendment claim might be raised."].)

whenever an officer undertakes a warrantless search of any portion of an automobile upon probable cause.

## II.

Since the state Constitution requires a showing of "actual exigency," the record in this case must be reviewed to see whether the required showing was made.

The record indicates that Sacramento Police Officer Charles Jones first observed the suspect Oldsmobile backed up to the garage of the abandoned barn[4] where Richard Stevens had seen the stolen pickup earlier in the day. Jones placed himself in a position so that he could observe anyone coming to or going from the premises, and remained in that position for approximately 35 minutes. At approximately 1:30 p.m., he and four or five fellow Sacramento police officers entered the property. Real party and his confederate, Cook, were apprehended as they walked out of the garage, and were handcuffed and placed in one of the police vehicles. Two of the officers then proceeded to search the passenger compartment of the Oldsmobile. Finding the keys in the ignition, they then proceeded to search the trunk. None of the officers voiced any concern at the hearing on the motion to suppress that associates of either suspect might arrive on the scene or be in the area.

In granting real party's motion to suppress the evidence, the trial court found that there had been an insufficient showing of exigent circumstances to justify the warrantless search of the trunk. This court's power to review that ruling is circumscribed by familiar rules of appellate review.

"A proceeding under [Penal Code] section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. [Citations.] The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence." (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

"The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraor-

---

[4]The property where the search occurred was located within the city limits of Sacramento, less than 10 miles from the downtown courthouse.

dinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], fn. omitted; see also *People* v. *Cardenas* (1982) 31 Cal.3d 897, 911 [184 Cal.Rptr. 165, 647 P.2d 569]; *People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *North* (1981) 29 Cal.3d 509, 513 [174 Cal.Rptr. 511, 629 P.2d 19].)

Substantial evidence supports the trial court's finding that no exigent circumstances were present here. Both real party and his associate were in custody. Several officers were present, and there was not the slightest hint that any acquaintances of the suspects, who might have tampered with the car while a warrant was being procured, were in the vicinity. Moreover, with so many officers on the scene, at least one officer could have stayed behind to secure the vehicle while his colleagues travelled the short distance to the magistrate. And, if the officers reasonably believed that this course of action was impractical, the vehicle could have been towed to a more secure location (as was eventually done) pending a magistrate's decision to issue a warrant.

The superior court's finding that no actual exigencies existed to excuse the warrantless search of the car trunk is supported by substantial evidence. I would deny the writ of mandate.

Reynoso, J., concurred.