[No. F003605. Fifth Dist. Jan. 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
GUADALUPE SANDOVAL, Defendant and Appellant.

**COUNSEL**

Michael J. Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Joel Carey, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), Acting P. J.—**

### STATEMENT OF THE CASE

■ ■■■ Appellant appeals from a judgment of conviction upon a guilty plea of one count of possession of cocaine (Health & Saf. Code, § 11350), urging error in the denial of his motions to set aside the information (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5).[1]

### STATEMENT OF FACTS[2]

Just before 1 a.m. on the morning of July 17, 1983, Modesto Police Officer Paul Konsdorf, on routine patrol in his marked car, stopped momentarily in a city parking lot adjacent to the Vintage Restaurant. The restaurant had a bar which stayed open until early morning. Fights, vandalism and incidents of intoxication often occurred in the parking lot.

Officer Konsdorf's attention was drawn to the occupants of a 1973 Ford pickup parked approximately 26 feet from his patrol car. He observed the male driver and female passenger alternately leaning forward in their seats, out of sight. When upright, the female passenger kept looking over her right shoulder as if to see whether anyone was approaching.

Konsdorf got out of his car and walked up to the driver's side of the pickup to see what the occupants were doing. With the aid of the parking lot lights and his flashlight, Konsdorf saw the male driver holding a rolled up $20 bill in his right hand and balancing an upside-down frisbee on his lap with his left hand; a red-and-white, four-inch long straw, a razor blade, and a small amount of white powder were inside the frisbee.

Konsdorf immediately opened the driver's door and informed appellant he was under arrest. As Konsdorf took appellant by the arm and assisted him from the vehicle, appellant volunteered, "It's only $20 worth of coke."

---

[1]An appeal may be taken from a denial of a motion to suppress evidence though a guilty plea is subsequently entered (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 897 [150 Cal.Rptr. 910, 587 P.2d 706]), and the denial of appellant's Penal Code section 995 and 1538.5 motions may be simultaneously reviewed in one appeal. (*People* v. *Schoennauer* (1980) 103 Cal.App.3d 398, 405-406 [163 Cal.Rptr. 161].)

[2]Upon stipulation, the matter was submitted to Superior Court Judge Charles Stone based upon the preliminary hearing transcript. No additional evidence, except for a short excerpt of clarifying testimony from the arresting officer, was offered at the de novo hearing on appellant's section 1538.5 motion; a single statement of facts is used relating to appellant's sections 995 and 1538.5 motions.

Konsdorf handcuffed appellant and had him stand at the rear of the pickup while the officer retrieved the frisbee and its contents. The officer then went around to the passenger's side, told the female she was also under arrest, and handcuffed her. After placing both arrestees into his patrol unit, Konsdorf returned to the pickup to look for further evidence of narcotics. He saw a closed, blue canvas bag resting on top of the seat, between where the two occupants had been sitting. Konsdorf opened the canvas bag and found two smaller packages wrapped in magazine paper. Inside, he found more white crystal powder, stipulated to be cocaine.

## DISCUSSION

### I. *The Investigation of the Automobile.*

Appellant contends Konsdorf's actions in approaching the vehicle to conduct an investigation constituted an illegal detention. The contention is totally without merit.

Not all contacts by a police officer with the citizenry constitute Fourth Amendment intrusions into the citizen's privacy. Under California law, a Fourth Amendment-invoking police detention occurs "[i]f the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, . . ." (*In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Bower* (1979) 24 Cal.3d 638, 643 [156 Cal.Rptr. 856, 597 P.2d 115] [a detention also occurs " 'whenever a police officer accosts an individual and restrains his freedom to walk away . . . .' "].) To detain an individual legally because he is suspected of involvement in criminal activity, the prosecution must establish that "at the moment of the detention, there were specific and articulable facts, which reasonably caused the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or about to occur; (2) the activity was related to crime; and (3) the individual under suspicion was connected to the activity." (*People* v. *Bower, supra,* 24 Cal.3d at p. 644.)

The officer's decision to investigate the automobile and its occupants was not a detention without (1) some physical restraint of freedom to move, recognized as such by the persons in the automobile, or (2) the stopping of the car and occupants for questioning upon the officer's suspicion they were personally involved in criminal activity.

Appellant was neither "stopped" nor "restrained" in any manner until the officer looked through the window and noticed appellant about to ingest a line of cocaine.

■ Nor did Konsdorf's observation of the contraband in appellant's hand constitute a "search" in the constitutional sense. The objects were in plain view and the officer clearly had a right to be in the position to have that view. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 549 [146 Cal.Rptr. 732, 579 P.2d 1048]; *People* v. *Vallee* (1970) 7 Cal.App.3d 167, 172 [86 Cal.Rptr. 475] ["Where officers lawfully approach a vehicle and observe in plain view contraband or other evidence of crime they are warranted in searching the vehicle and in making an arrest"].) Furthermore, "[t]hat the illumination was provided by the officer's flashlight is of no significance." (*People* v. *Rogers, supra,* at p. 549; see also *Texas* v. *Brown* (1983) 460 U.S. 730, 739 [75 L.Ed.2d 502, 512, 103 S.Ct. 1535, 1541].)

In *People* v. *Divito* (1984) 152 Cal.App.3d 11 [199 Cal.Rptr. 278], police officers traveling in an unmarked vehicle noticed defendant and two other men on a street corner examining a container in the light of the street lamps. The men, upon spotting the police vehicle, turned and walked away. One of the officers alighted from the police car and approached the defendant, whereupon the officer detected the odor of "PCP." The defendant was subjected to a pat-down search which produced contraband; the defendant was subsequently arrested.

The superior court granted the defendant's motion to suppress evidence obtained in the pat-down search upon the grounds the police officer had no right to stop or detain the defendant prior to the detection of the odor. The People appealed the ruling and the Court of Appeal reversed the suppression order, holding the officer's actions in stopping the police vehicle and walking toward the defendant did not constitute a detention. "Officer Avila was not constitutionally foreclosed from approaching respondent, or any other citizen, on a public street as it is beyond question that a mere 'contact' or 'approach' does not invoke Fourth Amendment considerations. [Citations.] While the officer's reason for approaching respondent was the inchoate suspicion that he might be involved in illegal narcotics activity, the officer did not convey this suspicion to respondent nor take any action to restrict or otherwise curtail respondent's freedom of movement prior to his smelling the distinctive chemical odor about respondent's person. A detention commenced only after the officer lawfully approached respondent and detected the characteristic odor of PCP." (152 Cal.App.3d at p. 14.)

■ The instant case is indistinguishable. Konsdorf's approach of appellant's truck on the inchoate suspicion appellant might be involved in criminal activity did not invoke any Fourth Amendment privacy considerations as far as appellant is concerned; appellant's contention is rejected. (See also *Florida* v. *Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 236, 103 S.Ct. 1319, 1324].)

## II. *The Search of the Closed Blue Canvas Bag.*

 Appellant also contends the search of the closed blue canvas duffle bag found on the front seat of the truck cannot be justified as a search incident to a lawful arrest or under the automobile exceptions to the warrant requirement. Appellant's contention is meritless. The search was justified under the full panoply of California and federal decisions interpreting the "automobile exception" to the warrant requirement.

 In *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557 [128 Cal.Rptr. 641, 547 P.2d 417], the California Supreme Court reiterated its view that police officers were empowered under the *Carroll* doctrine (*Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]) to search an automobile as long as it could be demonstrated that " ' "(1) exigent circumstances rendered the obtaining of a warrant an impossible or impractical alternative, and (2) probable cause existed for the search." ' " (*Wimberly* v. *Superior Court, supra,* at p. 563, quoting *People* v. *Cook* (1975) 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148].)

Regarding the exigency requirement, the court recently stated that a search may be conducted of the interior of the automobile upon probable cause that it contains contraband " '*despite the absence of any additional exigent circumstances.*' " (*People* v. *Superior Court (Valdez)* (1983) 35 Cal.3d 11, 15 [196 Cal.Rptr. 359, 671 P.2d 863]; *People* v. *Chavers* (1983) 33 Cal.3d 462, 469 [189 Cal.Rptr. 169, 658 P.2d 96].) Further, upon a finding of probable cause to search the interior of the vehicle for contraband, the scope and character of the search is not defined by the type of container to be searched or the legitimate expectation of privacy that might be attached to the container, but rather by "the reason for the search and the kind of object believed to be concealed." (*People* v. *Chavers, supra,* 33 Cal.3d 462, 470; *People* v. *Superior Court (Valdez), supra,* 35 Cal.3d at p. 15; *United States* v. *Ross* (1982) 456 U.S. 798, 824 [72 L.Ed.2d 572, 593, 102 S.Ct. 2157] [*Ross* characterized the scope of the search to be "defined by the object of the search and the places in which there is probable cause to believe [the contraband] may be found."].)[3]

---

[3]In *United States* v. *Ross, supra,* 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157], the United States Supreme Court held that a police officer who legitimately stops an automobile and who has probable cause to believe contraband is concealed somewhere within it "may conduct a search of the vehicle that is as thorough as a magistrate could authorize by warrant 'particularly describing the place to be searched.' " (*Id.,* 456 U.S. at p. 800 [72 L.Ed.2d at p. 578, 102 S.Ct. at p. 2159].) In arriving at this conclusion, the court found no distinction between the search of containers in a vehicle upon probable cause and a search of containers within a house for which a search warrant had been issued by a neutral magistrate upon probable cause. The court stated: "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, draw-

■ Moreover, the scope of the officer's search, which included the contents within the zipped duffle bag in the passenger area was reasonable given the nature of the "object believed to be concealed." Given the juxtaposition of the duffle bag to both occupants of the front seat of the passenger compartment, it is logical that additional contraband could have been stored in the bag.

Undoubtedly, probable cause existed for Konsdorf to search the interior of the truck for additional contraband. ■ "[P]robable cause for a search exists when an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched." (*Wimberly* v. *Superior Court, supra,* 16 Cal.3d 557, 571.) ■ The presence of the cocaine in the frisbee in addition to the accompanying narcotics paraphernalia associated with the ingestion of cocaine presented a solid foundation upon which the officer could reasonably believe the source of the cocaine was located somewhere within the vehicle. (See *id.,* at p. 564 ["the observation from outside the vehicle of contraband in plain view inside the vehicle may furnish probable cause to believe that additional contraband is secreted therein and to justify a search therefor."].) The search of the interior of appellant's vehicle was supported by probable cause.

The warrantless search upon probable cause of the duffle bag found in the interior of appellant's truck violated neither state nor federal Constitution.[4]

---

ers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." (*Id.,* 456 U.S. at p. 821 [72 L.Ed.2d at p. 591, 102 S.Ct. at pp. 2170-2171.) Thus, it would appear that the basis for the holding in *Ross* is the reduced expectation of privacy in a vehicle and its contents when probable cause is given to believe the vehicle is transporting contraband. (*Id.,* 456 U.S. at p. 821 [72 L.Ed.2d at p. 591, 102 S.Ct. at p. 2171.)

[4]That the duffle bag was in the exclusive possession of Konsdorf or any increased expectation of privacy appellant may have had in his personal effects did not render the search of the duffle bag invalid. In *People* v. *Superior Court (Valdez), supra,* 35 Cal.3d 11, the Supreme Court noted that while it may have been possible for police officers to secure a search warrant before searching the trunk of the defendant's automobile, believed to contain parts of a "stripped" car, a "prompt on-the-scene warrantless search" of the automobile was permissible given probable cause to search the trunk at the outset. (*Id.,* at pp. 15-16.) The only exigency required was the probable cause to search the trunk for additional evidence. Nor did the increased expectation of privacy in the contents of the trunk sway the majority, although the court previously had recognized that "'a separate and distinct intrusion of defendant's privacy occurred when a trunk was unlocked and opened—an intrusion, moreover, into the area of the car in which defendant probably had the greatest reasonable expectation of privacy.'" (*Wimberly* v. *Superior Court, supra,* 16 Cal.3d 557, 567, quoting *People* v. *Superior Court (Courie)* (1974) 44 Cal.App.3d 207, 211 [118 Cal.Rptr. 586].)

The search of the duffle bag as opposed to the automobile trunk in this case appears to be constitutionally indistinguishable under the above principles. The search of the automobile and the contents within, upon probable cause, is limited only by the nature of the object

The judgment is affirmed.

Hamlin, J., and Best, J., concurred.

---

believed to be concealed; thus, while probable cause to search for a stolen typewriter would not justify a search of the glove compartment, a small duffle bag could be searched for contraband because of the likelihood of storage of contraband in such a container.