Filed 4/7/14  P. v. Zaragoza CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN FRANCISCO ZARAGOZA,<br><br>    Defendant and Appellant. | B227234<br><br>(Los Angeles County<br>Super. Ct. No. MA042958) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Hayden Zacky, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Juan Francisco Zaragoza appeals from the judgment entered after a jury convicted him of attempted robbery, attempted first degree murder, and possession of a sawed-off rifle. We reject his contentions that there was insufficient evidence he acted with the intent to kill, and that the trial court committed error through an improper instruction about the jury's use of gang evidence and by failing to instruct on Zaragoza's third party culpability theory. We therefore affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

At around 5:00 p.m. on July 28, 2008, a man later identified as Juan Francisco Zaragoza pushed his way through the back door of a Palmdale donut shop, pointed a gun at the head of employee Kim Cheng Chour, and dragged her by the neck to the cash register as he screamed "rob." Chour ran out the front door after Zaragoza put down the gun and tried to open the register. As Chour ran past the shop's front window she heard a gunshot that shattered the window and felt air movement as a bullet passed over her head.

Gabriel Pimental and Lorena Diaz were driving nearby when they heard a gunshot and saw a man carrying a gun running down the street. After Los Angeles County sheriff's deputies arrived, Pimental, Diaz, and Chour described the man they had seen as a young Hispanic who was either bald or had short hair. Chour said the man had worn shorts and a grey short sleeve shirt that he discarded nearby. Pimental said the man wore shorts and a black t-shirt with "squares" on them. Diaz said the man wore a dark t-shirt and plaid shorts.

Sheriff's Detective and Gang Investigator Tyrone Berry was dispatched to the donut shop and, based on unspecified information, picked up Zaragoza at his nearby home and brought him to a field show-up.[1] According to Berry, when he picked up

---

[1] When Berry drove near the crime scene, he saw 13 Kings graffiti and decided to look through his "gang book" to look at known 13 Kings members. He decided to go to Zaragoza's house after seeing his name and realizing that he lived nearby. The trial court decided that the jury should instead hear a purposely vague explanation for Berry's decision to contact Zaragoza.

2

Zaragoza, Zaragoza was perspiring and appeared nervous. Berry did not say why he was there and, after he placed Zaragoza in his squad car, Zaragoza asked, without any prompting, "did anybody get hurt?" When Berry asked what he was talking about, Zaragoza asked, "did that lady get hurt?"

Chour, Pimental, and Diaz quickly identified him as the man they had seen. When Berry arrived at Zaragoza's house, Zaragoza had short hair and was wearing a dark t-shirt and white and blue plaid shorts. Pimental and Diaz had not gotten a look at the face of the man they had seen running, and based their identifications on his clothing. Chour was able to see her attacker's face and identified Zaragoza based on his appearance.

As it turned out, Zaragoza had been unable to open the donut shop's cash register. He was charged with attempted robbery and attempted first degree murder, along with allegations that he committed those crimes for the benefit of his street gang, the 13 Kings. He was also charged with possession of a sawed-off rifle after such a weapon was found in the backyard of fellow gang member Eric Razo and was then identified by Chour, Pimental, and Diaz as being similar to the weapon they had seen Zaragoza carry.[2] The gang allegations were dismissed before the trial started.

In addition to the eyewitness testimony, the jury heard that three particles of gunshot residue were found on Zaragoza's hands after his arrest, and that gym shoes found at his house had a tread pattern similar to a shoe print found right after the holdup in the wet soil of a planter located just outside the donut shop. No bullet or shell cartridge was found, and no usable fingerprints were recovered from the donut shop or the rifle and ammunition found in Razo's backyard.

Berry qualified as an expert witness on street gangs and testified that Razo and Zaragoza were both members of 13 Kings and that it was common practice for gang members to either share a firearm or hide one at another gang member's home.

Zaragoza denied any involvement in the hold up and testified that he was ill and had stayed home on July 28, 2008. His girlfriend, Lorena Majorada, corroborated his

---

**2** The weapon was found when deputies arrested Razo on an unrelated attempted murder charge. Razo was convicted of that crime.

account.  According to Zaragoza, Razo came to his house the night of July 27, showed him a rifle he had just obtained, and talked about having fun with it as he "put in work" and committed robberies and other crimes for their gang.  Razo did not ask Zaragoza to take part in any crimes and Zaragoza did not offer to do so.

After his arrest, Zaragoza phoned Majorada and told her to go to Razo's house.  When she arrived, she saw Razo wearing a black t-shirt and black and white plaid shorts.  Razo also had a shaved head, which was consistent with the eyewitness descriptions of the perpetrator.  Majorada handed her cell phone to Razo so he could talk to Zaragoza about the donut shop hold-up.  Razo told Zaragoza that he  knew who did it, but would not identify that person.  Zaragoza told Razo that he should tell the person who did it to "step up" and take responsibility for the crime.

Zaragoza testified that when Berry took him to the field show-up on July 28 he asked Berry why he was there.  According to Zaragoza, Berry said, "Don't act dumb.  You know what happened up the street."  When being questioned by Berry the next day, Berry told him – falsely – that there was a security video of the incident and fingerprints from the donut shop.  Zaragoza told Berry he was glad because those items would prove his innocence.  He also asked if DNA had been found and requested a gunshot residue test.

Zaragoza never told sheriff's deputies or the prosecutor his suspicions that Razo had committed the crime because he was afraid of gang retaliation for snitching on a gang member.

Zaragoza contends:  (1)  the attempted first degree murder conviction must be reversed because there was insufficient evidence he acted with the intent to kill; (2)  the trial court erred by expanding its instruction on the jury's use of gang related evidence to his credibility; (3)  the trial court erred by failing to instruct the jury on third party culpability even though he did not ask for such an instruction; and (4)  if the last issue was waived because his lawyer did not ask for that instruction, the judgment must be reversed due to ineffective assistance of counsel.

4

**DISCUSSION**

1.      *There Was Sufficient Evidence of an Intent to Kill*

Although murder may be proven by implied malice, attempted murder requires proof of express malice – the specific intent to kill the victim. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).) This intent may be inferred from the defendant's acts and the circumstances of the crime. (*Id.* at p. 741.) Zaragoza contends there was insufficient evidence he acted with the intent to kill when he fired the shot that whizzed over Chour's head. We apply the substantial evidence rule and presume every fact to support the judgment that the jury could reasonably deduce from the evidence. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

The evidence here supports a finding that Zaragoza fired directly at Chour as she fled the donut shop and missed by inches. Firing toward a victim at close but not point blank range and missing is enough to support an inference of intent to kill if a fatal wound would have resulted had the bullet been on target. (*Smith, supra,* 37 Cal.4th at p. 741.) The inference arises even if the shooter fired only once and stopped out of necessity or fear, or simply had poor marksmanship. (*Ibid.*) As a result, the jury was justified in concluding that Zaragoza acted with the intent to kill.

Zaragoza cites three decisions for the proposition that an intent to kill may not be inferred from his commission of an assault with a deadly weapon or from the mere act of firing a gun: *People v. Ratliff* (1986) 41 Cal.3d 675, 695 (*Ratliff*); *People v. Johnson* (1981) 30 Cal.3d 444, 447-449 (*Johnson*); and *People v. Belton* (1980) 105 Cal.App.3d 376, 380 (*Belton*).) As set forth below, all three decisions are inapplicable.

The defendant in *Belton, supra,* 105 Cal.App.3d 376 was convicted of arson and attempted murder after setting fire to the porch of his ex-wife's apartment after visiting with her earlier in the day. The *Belton* court reversed the attempted murder conviction because apart from a quarrel three months earlier, there was no evidence of any threats, continued bad blood, or earlier attempts to harm the ex-wife. As a result, an inference of intent to kill was entirely speculative, the court held. (*Id.* at pp. 380-381.) *Belton* is

5

distinguishable on its facts and has no application to a case such as this, where the defendant fired a shot toward his victim.

Zaragoza also relies on *Belton's* statement that the specific intent required for attempted murder "cannot be inferred merely from the commission of another dangerous crime . . . [such as] . . . assault with a deadly weapon." (*Belton, supra,* 105 Cal.App.3d at p. 380.) The decisions *Belton* relied on to support that proposition all involved instructional error by allowing a jury to presume intent to kill merely from evidence of an assault with a deadly weapon. (*People v. Snyder* (1940) 15 Cal.2d 706; *People v. Miller* (1935) 2 Cal.2d 527; *People v. Maciel* (1925) 71 Cal.App. 213.) These cases have no bearing on whether it is reasonable to infer the intent to kill from firing a loaded gun at someone. Furthermore, the *Belton* court's statement is contrary to the rule stated in *Smith, supra,* 37 Cal.4th at page 741.

The other two decisions cited by Zaragoza – *Ratliff* and *Johnson* – suffer from the same flaw because both also involved instructional error. In *Ratliff, supra,* 41 Cal.3d at page 695, the trial court did not instruct the jury that the specific intent to kill was required for attempted murder or that the implied malice instruction did not apply to that charge. In *Johnson, supra,* 30 Cal.3d at pages 447-449, the trial court erred by instructing the jury that implied malice may support assault with intent to commit murder. The California Supreme Court has clarified that *Ratliff* is confined to instructional error analysis and, where the jury has been properly instructed on attempted murder, has no bearing on sufficiency of the evidence issues. (*People v. Avila* (2009) 46 Cal.4th 680, 702, fn. 7; *People v. Arias* (1996) 13 Cal.4th 92, 129-130, fn. 10.)

2.    *No Error From Instructing the Jury That Gang Evidence Could Be Considered In Evaluating Witness Credibility*

The trial court's initial jury instruction on gang evidence was a modified version of CALCRIM No. 1403 that told the jury it could consider such evidence for only the limited purpose of determining whether Zaragoza possessed or used the sawed-off rifle during the attempted hold-up. The jury was told not to use the evidence for any other

purpose and that it could not conclude from the evidence that Zaragoza was a bad person or was disposed to commit crimes.

After the jury began deliberating, the prosecutor asked the trial court to expand the instruction to issues of bias, credibility, and motive. The trial court agreed that the instruction was relevant on the issue of credibility based on Zaragoza's testimony that he did not immediately implicate Razo because he feared gang retaliation for being a snitch. The trial court called the jury back in, reminded it of his previous instruction, and told the jury it could also consider gang evidence "when you evaluate the credibility or believability of a witness . . . ."[3]

Zaragoza contends the trial court erred by giving this instruction because: (1) it violated the rule against singling out the testimony of a particular witness; and (2) once the gang allegations were dismissed, the instruction was not warranted. We take each contention in turn.

Zaragoza cites several decisions concerning the rule against jury instructions that single out a particular witness's testimony, but none is factually applicable here. The rule applies when the instruction focuses exclusively or solely on the testimony of one witness and directs the jury how his testimony should be considered. (*People v. Wright* (1988) 45 Cal.3d 1126, 1135, fn. 6.)[4] It does not apply to instructions that are neutrally phrased and do not focus attention on a particular witness. (*People v. Turner* (1990) 50 Cal.3d 668, 699 [instruction proper when it applied neutral standards of credibility].) Nor is the principle violated even though the defendant is the only person to whom the instruction could apply. (*People v. Saddler* (1979) 24 Cal.3d 671, 680-681 [considering pattern jury instruction that where the defendant testifies, jury may consider his failure to explain adverse evidence].) The modified version of CALCRIM No. 1403 given in this case did

---

**3**   The trial court also expanded CALCRIM No. 1403 to include the use of gang evidence when considering the facts and information relied on by expert witnesses. Zaragoza does not complain about that portion of the expanded instruction.

**4**   *Wright* is one of the decisions cited by Zaragoza.

7

not mention any witness by name and was neutrally phrased. Therefore, it did not violate the rule against instructions that single out a particular witness.

Where gang evidence is relevant to issues of witness credibility, the trial court may include it in CALCRIM No. 1403 so the jury may consider it for that purpose. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1169.) Zaragoza contends the instruction was not proper because: (1) the gang allegations had been dismissed; (2) the trial court and the parties did not originally view the gang evidence as relevant to any issue other than to explain why Razo might have hidden the gun for Zaragoza; and (3) there were no credibility issues that concerned gang membership.

Even though the gang allegations were dismissed, gang evidence was admissible so long as it had more than minimal probative value. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 192.) Zaragoza opened the door to gang evidence through his theory that Razo committed the crime. Zaragoza's testimony that he delayed naming Razo publicly from fear of gang retaliation put his credibility on that claim directly at issue. Evidence that a witness delayed coming forward due to fear of gang retaliation is relevant to support that witness's credibility. (*People v. Loza* (2012) 207 Cal.App.4th 332, 345-346.)[5] Although the prosecutor's delayed realization of this issue might have been a reason to deny the requested instruction, it does not eliminate the trial court's discretion to reinstruct the jury on that point after it began deliberating Finally, the instruction actually benefitted Zaragoza because it helped bolster his explanation for the delay in pointing the finger at Razo. As a result, we conclude the trial court did not err by amending its original instruction to include witness credibility.

---

[5]     Zaragoza cites *People v. Perez* (1981) 114 Cal.App.3d 470, 477, for the proposition that gang evidence is never admissible on the issue of witness credibility. In that case, however, the gang evidence had no relevance to any issue at trial, and *Perez* is therefore inapplicable when such evidence is in fact relevant. (*People v. Sandoval* (1992) 4 Cal.4th 155, 175.)

3.    *The Trial Court Was Not Required to Instruct on Third Party Culpability Absent A Request By Defense Counsel*

Zaragoza's trial counsel did not ask for a pinpoint instruction on third party culpability, but he contends the trial court was obligated to give such an instruction even in the absence of a request. As the Supreme Court held in *People v. Abilez* (2007) 41 Cal.4th 472, 517 and in *People v. Gutierrez* (2009) 45 Cal.4th 789, 824-825, the trial court has no such duty.

As in both *Gutierrez* and *Abilez,* the jury in this case was properly instructed on reasonable doubt, the burden of proof, and the presumption of innocence. Zaragoza contends that his case is different because the prosecutor confused the jury by arguing that the defense could have, but chose not to, show Chour a photo of Razo at trial and examine her about whether Razo looked like her assailant. Zaragoza fails to mention that the prosecutor followed that statement by telling the jury that he did not "mean to imply that the defendant has the obligation of trying to prove himself innocent. That's not what I'm saying. But what I am saying is that if there was a sincere belief that Mr. Razo had done this, that this could have been taken care of a lot sooner than now."

As we read it, the prosecutor reinforced that he carried the burden of proof and did nothing more than question the credibility of Zaragoza's claim that Razo had been the actual perpetrator. (See *People v. Marshall* (1996) 13 Cal.4th 799, 831-832 [defendant asserted prosecutorial misconduct from statement that defendant wanted jury to hear false statement by person defendant claimed committed the crime in order to create reasonable doubt; court held that in context no likelihood jury was misled about who bore the burden of proof].) In short, nothing in the record calls for us to depart from the general rule that the trial court had no sua sponte duty to give a third-party culpability instruction.

4.    *Defense Counsel's Failure to Request a Third-Party Culpability Instruction Did Not Amount to Prejudicial Ineffective Assistance of Counsel*

In the event we conclude that the trial court was not obligated to instruct on third party culpability on its own motion, Zaragoza contends we should reverse because his

trial counsel's failure to request such an instruction amounted to ineffective assistance of counsel.

Claims of ineffective assistance of counsel entail deficient performance assessed under an objective standard of professional reasonableness and prejudice measured by a reasonable probability of a more favorable outcome absent the deficient performance. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 48.) Assuming for the sake of argument that Zaragoza satisfied the first element, he cannot establish a reasonable probability of a more favorable outcome.

In *Gutierrez, supra,* 45 Cal.4th at page 825, the Supreme Court held in the alternative that the trial court's failure to instruct on third party culpability was harmless because the jury was properly instructed on reasonable doubt and the correct burden of proof and could have acquitted the defendant if it chose to believe his testimony that someone else was responsible for the crimes charged. As a result, there was no reasonable probability of a different outcome. (*Ibid.*) That is the same standard we apply to Zaragoza's claim of ineffective assistance of counsel. As in *Gutierrez*, the jury was properly instructed on the burden of proof and reasonable doubt. It was clear from the evidence and the argument of counsel that the jury understood that Zaragoza's defense turned on his assertion that Razo had been the perpetrator. In convicting Zaragoza, the jury chose not to believe that evidence. Accordingly, we hold that defense counsel's failure to request a third-party culpability instruction was not prejudicial.

## DISPOSITION

The judgment is affirmed.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.                                                      GRIMES, J.

10