Filed 9/30/22  P. v. Garcia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO GARCIA,<br><br>Defendant and Appellant. | C094758<br><br>(Super. Ct. No. 18FE001992) |

A jury found defendant Armando Garcia guilty of attempted murder and assault with a firearm and found true a firearm enhancement, among other enhancements. Defendant admitted he had received a prior conviction, and the trial court denied his motion to strike the firearm enhancement, then sentenced him to a term of 39 years to

1

life. Defendant's sentence included the upper term sentence on the assault conviction, which the court stayed under Penal Code section 654.[1]

On appeal, defendant asserts his convictions must be reversed because: (1) the attempted murder conviction is not supported by sufficient evidence; and (2) the trial court erred when it denied his *Trombetta*[2] motion as to the destruction of the gun used in the offenses. As to his sentencing, defendant further argues: (3) insufficient evidence supports the treatment of his prior conviction as a prior strike; (4) the legislative changes to sections 654 and 1170 made by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518) (Stats. 2021, ch. 441) and Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (Stats. 2021, ch. 731) require remand for resentencing; and (5) the trial court failed to exercise informed discretion because it only considered whether to strike his firearm enhancement, rather than impose a lesser enhancement, consistent with *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).

We agree with defendant's sentencing contentions, but disagree with his other claims. Accordingly, we will remand the case for retrial on the prior strike conviction, reconsideration as to the motion to strike the firearm enhancement, and resentencing consistent with current law.

BACKGROUND

In 2012, defendant, who went by the moniker "Bad Boy," shot the victim, who went by the moniker "Puppet," in his chest, stomach, and forearm. The victim made it back to his house, where sheriff's deputies found him. The victim did not identify the shooter, but pointed up the street to indicate where the shooting had happened. Deputies canvassed the area and found blood and shell casings. Specifically, they found blood and

---

[1] Undesignated statutory references are to the Penal Code.

[2] *California v. Trombetta* (1984) 467 U.S. 479 (*Trombetta*).

human tissue on a fence and blood leading up to the front porch of a house. They also found five spent shell casings and one live round. Although the shooting occurred in 2012, defendant was not arrested until 2018.

At the time of the shooting, a crime scene investigator tested the victim's body and hands for gunshot residue. Both of the victim's hands had gunshot residue particles. At trial, an employee of the county forensic services explained that gunshot residue could appear on a person's hands because they fired a gun or if they were near the front of a gun when it was fired. She explained that the victim's gunshot residue pattern would be consistent with a person who was facing a shooter and was within 10 feet of the shooter.

The victim was in the hospital for about two weeks and required a breathing tube. He walked with a cane for two or three months after his release from the hospital. At trial, the victim said he did not know who shot him, did not remember the location of the shooting, and "could have" lied to the deputies about the location when they spoke to him at the time of the shooting. He said he did not see anyone in the courtroom that he recognized.

In 2013, police encountered defendant and conducted a patdown search. They found a loaded handgun in his pocket, a 7.62- by 25-millimeter caliber Norinco semiautomatic. A police sergeant testified that this type of gun was rare. Police confiscated the gun. A police officer then test-fired the gun. The officer described the gun as "pretty unique," in part because it had a similar barrel diameter to an AK-47 assault rifle. After collecting the shell casings from the test-firing, the officer entered them into the Integrated Ballistics Identification System, or "IBIS," which is a system that allows users to match ejector marks and firing pin marks from each collected shell.

Also in 2013, the victim was booked into county jail. A deputy assigned the victim to a cell, and the victim complained there was someone in a nearby cell who had shot him. He refused to identify the shooter. Jail records indicate both defendant and the

3

victim were assigned to the same group of cells on that day. At trial, the victim said he did not remember any of these events.

In 2017, an undercover informant working with the Federal Bureau of Investigation (FBI) attended a meeting with defendant. In the recording of the meeting, which was entered into evidence at trial, defendant admitted he shot "Puppet." Defendant said he had a Norinco handgun "that shot out, like, K bullets." He stated he shot Puppet "in my front yard." He elaborated, saying, "I popped that fool, like, eight times. And that fool was I- he loo- he lived. [¶] . . . [¶] . . . That fool was livin' off the tube for, like, two weeks. [¶] . . . [¶] . . . That fool was in the hospital every day. [¶] . . . [¶] . . . That's what up he came out with that cane and everything though. All fucked up." After reviewing the recording, FBI agents identified the victim as the "Puppet" to which defendant had referred.

In 2018, a detective interviewed the victim.[3] The victim said he knew who had shot him, but did not want to "snitch." He admitted he had seen the shooter in jail "a year or two years" after the shooting. He said the shooter's moniker "starts with a B." When the detectives asked whether it was "Bad Boy," the victim responded, "Ha. I mean, that's all I can tell you. [¶] . . . [¶] . . . [Y]ou're - you're there." When prompted again for the shooter's street name, the victim said, "Well, you - you - you guys - you guys - you guys got it . . . . You guys know, so . . . ." The victim also confirmed his own moniker had been "Puppet." At trial, the victim disclaimed his statements in the interview and said he did not remember making them.

At trial, a forensic firearm identification expert testified she compared the recovered shell casings from the crime scene with the test-fired casings. Experts can distinguish casings fired from different firearms because of minor differences in the

---

[3] A recording of the interview was entered into evidence.

4

firearm manufacturing process, which the expert can see using a comparison microscope. The recovered casings were fired from the same gun as the test-fired casings.

The jury found defendant guilty of attempted murder (§§ 187, subd. (a), 664; count one) and assault with a semiautomatic firearm (§ 245, subd. (b); count two). The jury also found true firearm enhancement allegations under section 12022.53, subdivisions (b), (c), and (d) as to the attempted murder count and under section 12022.5, subdivision (a) as to the assault count. The jury also found true a great bodily injury enhancement as to the assault count. (§ 12022.7.) Defendant admitted he had a 1998 conviction for reckless discharge of a firearm (§ 246.3) and the parties stipulated to a factual basis.

At the August 2021 sentencing hearing, defendant moved to strike the prior conviction and the section 12022.53, subdivision (d) firearm enhancement. The court denied the motion, saying the enhancement was "well supported by the facts." The court imposed a determinate sentence of 14 years (the midterm, doubled for the prior conviction) for the attempted murder conviction, plus a consecutive indeterminate term of 25 years to life for the section 12022.53, subdivision (d) enhancement. The court also imposed the upper term sentence of nine years for the assault conviction, but stayed the sentence under section 654. The court did not state any reasons for imposing the upper term.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Insufficient Evidence*

Defendant contends the attempted murder conviction must be reversed because the evidence did not show specific intent to kill the victim. We disagree.

When considering a claim of insufficient evidence, we examine the entire record to assess whether any rational trier of fact could have found the defendant guilty beyond

5

a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Thus, "we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*Ibid.*)

The California Supreme Court has explained that an attempted murder conviction requires that "the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 602, quoting *People v. Lee* (2003) 31 Cal.4th 613, 623.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Canizales,* at p. 602.) " 'The act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." [Citation.]' [Citations.] ' "The fact that the shooter may have fired only once and then abandoned his efforts out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." [Citation.]' [Citation.]" (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

The evidence introduced at trial was sufficient to support the attempted murder conviction. The gunshot residue evidence indicated defendant was standing approximately 10 feet away from the victim when he fired his gun, which was consistent with the victim's statements when he was interviewed by police. Defendant shot the victim in the chest, stomach, and forearm, and could easily have inflicted a mortal wound, supporting an inference that he intended to kill the victim. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1149.) Defendant shot at the victim at least five times, and claimed he had shot at him even more, saying he "popped that fool eight times." The fact defendant never explicitly said he intended to kill the victim does not establish he lacked such intent, particularly where the circumstances of the shooting are more than adequate to permit a reasonable jury to find defendant acted with intent to kill.

We are not persuaded to the contrary by defendant's citations to *People v. Ratliff* (1986) 41 Cal.3d 675; *People v. Johnson* (1981) 30 Cal.3d 444; and *People v. Patterson* (1989) 209 Cal.App.3d 610. As defendant acknowledges, none of these cases involved substantial evidence challenges. Rather, they considered whether the act of shooting a victim at close range, in *Ratliff* and *Johnson*, or simply shooting a victim, in *Patterson*, was so conclusive of intent to kill as to render harmless a jury instruction error as to the intent to kill. (*Ratliff,* at p. 696; *Johnson*, at pp. 447-449; *Patterson*, at p. 615.) Here, the issue is not whether the evidence *requires* the conclusion defendant possessed an intent to kill, but rather whether the evidence *allows* the conclusion defendant possessed an intent to kill, considered from the perspective of a reasonable factfinder. Nor is this a case where intent was inferred simply from "shooting a firearm toward a person"; as explained above, the specific circumstances of the shooting provided the evidence of intent to kill, not the simple fact of the shooting itself. We conclude there was sufficient evidence to support defendant's attempted murder conviction.

## II

### *Failure to Preserve Firearm*

Defendant contends the trial court erred in denying his motion to dismiss the prosecution pursuant to *Trombetta, supra*, 467 U.S. 479 and *Arizona v. Youngblood* (1988) 488 U.S. 51 (*Youngblood*) based on the failure to preserve the gun used in the shooting, which was seized in 2013. Defendant also argues the court had a responsibility to give the jury an adverse inference instruction saying the firearm was destroyed before the defense had an opportunity to examine it. Finally, to the extent such a jury instruction was forfeited, defendant argues he received ineffective assistance of counsel. We disagree with all three contentions.

A. *Additional Background*

Before the preliminary hearing, defendant filed a motion to dismiss the case based on the destruction of the gun used in the shooting and summarized the supporting facts. After the gun was seized by the police department during defendant's 2013 arrest, and before defendant's 2018 arrest for the current offenses, the gun was test-fired and shell casings from the firing were collected and preserved. In April 2013, defendant pleaded no contest to a felon in possession of a firearm charge based on his possession of the gun; the prosecution authorized the release and destruction of the gun because judgment and sentence had been imposed; and the gun was later destroyed in December 2013. In the motion, defendant asserted he was entitled to conduct his own independent expert analysis, and that the destruction of the gun precluded him from doing so.

Counsel elicited testimony at the preliminary hearing regarding defendant's motion. In particular, officers stated they collected five spent shell casings and one live round of 7.62- by 25-millimeter ammunition at the scene of the crime; seized defendant's gun, a Norinco 7.62- by 25-millimeter caliber semiautomatic handgun, when they arrested him in 2013; and described defendant's gun as unique based on the kind of ammunition it used.

8

An officer testified he had booked the gun into evidence after it was seized and it would have been a detective's responsibility to follow up on the gun seizure to determine whether it had been used in any unsolved crimes. The deputy was unaware if that had happened in defendant's case. Defendant's gun could have drawn more scrutiny in this process because it was a high-caliber weapon and defendant was described as a high-ranking gang member. Generally, shell casings obtained from a crime scene would have been entered into IBIS for possible matching if the same gun was used in later crimes, but the deputy did not know if that had occurred here. In this case, a police officer test-fired the gun and booked two expended cartridges into evidence. Documents submitted with defendant's motion indicated the gun was destroyed by the police department on December 31, 2013.

A criminalist compared the shell casings collected at the crime scene with the test-fired casings. She confirmed the casings recovered from the crime scene had been fired from the same gun that had been recovered from defendant. Specifically, the casings were the same caliber, had the same shape firing pin impression, and the same breech face markings. The criminalist's report had been reviewed and approved by a colleague in 2019.

Defendant's motion also attached a report from the National Integrated Ballistic Information Network. According to the motion, a detective had attempted to obtain a comparison between the recovered shell casings and test-fired shell casings using IBIS, but the casings had not been a match. The detective asked to "reconfirm" the comparison with the National Integrated Ballistic Information Network, which issued the January 2018 report indicating a "potential" match. The report cautioned that the correlation had "not yet been confirmed by microscopic comparison."

The trial court denied defendant's motion. The court noted that even though the gun had been destroyed, the preserved shell casings from the scene and the test-firing were available for a defense expert to analyze. Observing that the defense was free to

9

cross-examine witnesses as to the firearm and its destruction, the court determined that the shell casings, not the firearm itself, were the inculpatory evidence. Because the shell casings were available to defendant, and there was no evidence the gun had been destroyed in bad faith, the court denied the motion.

B. *Analysis*

"The state has a duty to preserve evidence that both possesses 'an exculpatory value that was apparent before the evidence was destroyed,' and is of 'such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' ([*Trombetta, supra,*] 467 U.S. [at p. 489].)" (*People v. Schmeck* (2005) 37 Cal.4th 240, 283, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638; accord, *People v. Carrasco* (2014) 59 Cal.4th 924, 961.) "If, however, 'no more can be said [of the evidence] than that it *could have* been subjected to tests, the results of which *might have* exonerated the defendant' (*Youngblood*, [*supra*, 488 U.S.] at p. 57), the proscriptions of the federal Constitution are narrower; 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law' [citations]." (*People v. Duff* (2014) 58 Cal.4th 527, 549.) The burden is on the defendant to show " 'bad faith' by the police." (*People v. DePriest* (2007) 42 Cal.4th 1, 42; *People v. Memro* (1995) 11 Cal.4th 786, 831, overruled on another ground by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

Here, there was no apparent exculpatory value in the gun when it was destroyed. The evidence adduced at the hearing did not suggest the gun had been tied to the victim's 2013 shooting before it was destroyed and, to the extent it could have been so tied, police preserved the test-fired shell casings, which adequately preserved defendant's ability to argue the seized gun was not the gun used in the shooting. The prosecution presented testimony from a criminalist about her comparison study between the crime scene shell casings and the test-fired shell casings, and, as the trial court noted, defendant was free to

10

examine the casings for himself or retain an independent expert to conduct a separate comparison study. Although defense counsel argued any defense expert would now be unable to conduct his or her own test-firings, it is unclear how or why this would prejudice the defense based on the evidence presented.

Under these circumstances, defendant's due process rights were violated only if the police department acted in bad faith by destroying the gun. (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 774.) The trial court determined there was no evidence the department had acted in bad faith, and we review that finding under the substantial evidence standard. (*Id.* at p. 776.) The gun was originally seized when police encountered defendant not long after the shooting, and there was no evidence adduced at the hearing to establish the police knew defendant was a suspect in the shooting at the time. Consistent with department practices, test-fired shell casings from the gun were preserved before the gun was destroyed. The gun was retained until judgment was entered in defendant's possession of a firearm case. The gun was destroyed later that year, and no evidence was presented suggesting that the gun was destroyed for any reason other than normal business practices. We see no indication of "a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* [(1963) 373 U.S. 83] and its progeny," nor any "allegation of official animus towards [the defendant] or of a conscious effort to suppress exculpatory evidence." (*Trombetta*, *supra*, 467 U.S. at p. 488.) Accordingly, the trial court did not err when it denied the *Trombetta* motion.

Defendant further contends the court was required to give the jury an adverse inference instruction, such as the one approved in *People v. Zamora* (1980) 28 Cal.3d 88, which allowed the jury to draw an adverse inference based on the destruction of evidence. While such an instruction "may be a proper response to a due process violation (see *Zamora, . . .* at p. 96), there was no such violation in this case. The trial court was

11

not required to impose *any* sanction, including jury instructions." (*People v. Cooper* (1991) 53 Cal.3d 771, 811.)

By the same token, defense counsel did not provide ineffective assistance when he failed to request such an instruction. Because we have concluded the trial court was not required to provide an adverse inference instruction, it must follow that defense counsel's failure to request the instruction did not fall below the standard of a reasonably competent attorney and was not prejudicial. (*People v. Ochoa* (1998) 19 Cal.4th 353, 414 ["A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome."]; see *People v. Dennis* (1998) 17 Cal.4th 468, 541 [claim of ineffective assistance premised on failure to request jury instruction must fail where defendant was not entitled to such instruction].)

III

*Prior Strike Conviction*

Defendant contends, and the People concede, the evidence was insufficient to show defendant's 1998 negligent discharge of a firearm conviction qualified as a prior strike conviction. We agree with the parties.

To qualify as a "strike," a prior conviction must be a " 'violent felony' " listed in section 667.5, subdivision (c), or a " 'serious felony' " listed in section 1192.7, subdivision (c). (§§ 667, subd. (d) & 1170.12, subd. (b).) The crime of discharging a firearm in a grossly negligent manner under section 246.3 qualifies as a violent felony only if "defendant uses a firearm which use has been charged and proved as provided in subdivision (a) of Section 12022.3, or Section 12022.5 or 12022.55." (§ 667.5, subd. (c)(8).) The offense qualifies as a serious felony only if "defendant personally uses a firearm." (§ 1192.7, subd. (c)(8).)

12

"The prosecution has the burden of proving beyond a reasonable doubt each element of a prior conviction used to enhance a defendant's sentence." (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 128.) "A common means of proving the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and commitment to prison." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1066.) "[I]f the prosecutor presents, by such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred. [Citations.] [¶] However, if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden." (*Ibid.*)

Here, defendant admitted he had been convicted of reckless discharge of a firearm in 1998, and the parties stipulated to a factual basis. He did not admit that his conviction was a serious or violent felony, or that he personally used the firearm at issue in the conviction. The court took judicial notice of the factual basis for the conviction from the court's files, but nothing in the record elaborates on the facts of the underlying conviction. Although the prosecution originally marked exhibits labeled "969B packet for defendant," "another 969B packet of defendant," and "certified rap sheet of defendant" for identification, the exhibits were later withdrawn and no copies are in the record. Similarly, neither the information nor the probation report provides any of the facts supporting the conviction.

As the parties agree, it is possible defendant was previously convicted only as an aider and abettor, and his 1998 conviction may not have involved the personal use of a

13

firearm. (*People v. Golde* (2008) 163 Cal.App.4th 101, 112.) We conclude there was insufficient evidence to support the use of the 1998 conviction as a "strike." Accordingly, we will vacate the prior serious felony finding and remand the matter to the trial court to allow the prosecution the opportunity for retrial. (*Id.* at p. 113; *People v. Barragan* (2004) 32 Cal.4th 236, 239.)

IV

*Senate Bill 567 and Assembly Bill 518*

Defendant argues Senate Bill 567, which limited the trial court's ability to impose the upper term sentence absent specified circumstances, and Assembly Bill 518, which amended section 654 to give trial courts increased discretion as to which punishments to impose and stay, apply retroactively to his case. Defendant contends the changes adopted by these bills require that his case be remanded for resentencing. The People agree remand is required. We agree and shall remand the matter to the trial court for resentencing.

Senate Bill 567 became effective January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c).) As relevant here, Senate Bill 567 limits the trial court's ability to impose an aggravated term of imprisonment absent the existence of specified circumstances. (§ 1170, subd. (b)(1)-(3).) A trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Assembly Bill 518, which also became effective on January 1, 2022, expands, rather than limits, the trial court's discretion. Under section 654, a defendant who violates multiple laws in a single course of action may be charged with and convicted of distinct crimes but sentenced for only one offense; sentence on the other offenses is

imposed but stayed. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673 (*Sek*); *People v. Mendoza* (2022) 74 Cal.App.5th 843, 862.) Former section 654 required the trial court to impose sentence based on the offense with the longest prison term. (*Mendoza*, at p. 862; *Sek*, at p. 673.) Assembly Bill 518 amended section 654 to "remove[ ] the requirement to impose the longest prison term" (*Sek,* at p. 673) in order "to give trial courts discretion in selecting the punished offense for conduct punishable under multiple provisions of law." (*Mendoza*, at pp. 861-862, fn. omitted.) Section 654, subdivision (a) now provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

We conclude both pieces of legislation apply retroactively under *In re Estrada* (1965) 63 Cal.2d 740 as ameliorative legislation applied to a nonfinal case. (*Sek, supra*, 74 Cal.App.5th at p. 673 [Assembly Bill 518]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [Senate Bill 567].)

Here, the trial court imposed the upper term sentence for defendant's assault conviction, then stayed that sentence under section 654. The court did not make any findings that would justify an upper term sentence under amended section 1170, subdivision (b), nor did it state any reasons for its selection of the upper term. Similarly, at the time the court stayed the sentence on the assault conviction, it had no discretion to stay the sentence on the attempted murder conviction, rather than the assault conviction, as it does under current law.

There is no clear indication what sentencing decisions the trial court would have made if it had possessed the sentencing discretion given by Assembly Bill 518 or was bound by the new requirements under Senate Bill 567. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [when sentencing decisions are made without informed discretion, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had

15

been aware that it had such discretion.' [Citations.]"].) Thus, we conclude remand is appropriate so the trial court may fully resentence defendant, incorporating the new legislative changes. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

V

*Firearm Enhancement*

Defendant argues that the trial court did not understand it had the ability to impose a lesser firearm enhancement, rather than strike the enhancement entirely, when it denied his motion to strike the firearm enhancement. Based on *Tirado*, defendant argues the case must be remanded so the trial court may exercise its discretion to strike the firearm enhancement and impose a lesser enhancement instead. The People agree remand is required on this basis. Pursuant to the Supreme Court's *Tirado* opinion, we must remand the matter to the trial court for resentencing.

A. *Additional Background*

Before his sentencing hearing, defendant moved to strike the firearm enhancement using section 12022.53, subdivision (h). When defense counsel argued the motion, the court interjected that defense counsel was discussing the enhancement under section 12022.53, subdivision (d), apparently believing that counsel's reference to subdivision (h) was an error. The court noted defendant's criminal history and the extent of the victim's injuries, and denied the motion.

B. *Analysis*

Section 12022.53 provides for a 10-year enhancement for the personal use of a firearm under subdivision (b), a 20-year enhancement for the personal and intentional discharge of a firearm under subdivision (c), and a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death under subdivision (d).

Effective January 1, 2018, Senate Bill No. 620 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 682, § 2) amended section 12022.53, subdivision (h) to provide: "The court

16

may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." In *Tirado,* our Supreme Court concluded that under the amended section 12022.53, subdivision (h), trial courts are not categorically prohibited from imposing a lesser enhancement, either charged or uncharged, if the prosecution has charged the greater enhancement and the facts supporting the lesser enhancement have been alleged and found true. (*Tirado*, *supra*, 12 Cal.5th at p. 697.) Thus, under the section 12022.53 statutory framework, trial courts are permitted to strike a subdivision (d) enhancement found true by the jury and to impose a lesser statutory enhancement instead. (*Tirado,* at p. 700.)

The trial court appears to have considered whether to strike the enhancement under section 12022.53, subdivision (d) only, and did not consider whether to impose one of the available lesser enhancements. Consistent with *Tirado*, the trial court now has discretion to strike and reduce a section 12022.53 firearm enhancement to a lesser firearm enhancement in section 12022.53. As discussed above, we will be remanding the case for a new sentencing hearing. In that hearing, the trial court may reconsider all sentencing choices previously made. (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258.) Thus, the trial court will be able to reconsider whether to strike defendant's section 12022.53, subdivision (d) enhancement. If the trial court decides to strike this enhancement, it may instead impose one of the lesser enhancements. We express no opinion as to how the court should exercise its discretion on remand.

## DISPOSITION

The prior strike conviction finding, the order on defendant's motion to strike the firearm enhancement, and defendant's sentence are vacated. The matter is remanded to the trial court to allow retrial on the prior strike conviction, reconsideration of the motion

17

to strike the firearm enhancement, and full resentencing consistent with sections 654 and 1170, subdivision (b), as amended.  In all other respects, the judgment is affirmed.


                                          /s/
                                          HOCH, J.



We concur:



 /s/
DUARTE, Acting P. J.



 /s/
EARL, J.